**AMERACE ESNA CORPORATION,**
Plaintiff,

v.

**HIGHWAY SAFETY DEVICES, INCOR-PORATION, et al., Defendants.**

Civ. A. No. 3-3200-B.

United States District Court,
N. D. Texas,
Dallas Division.

July 9, 1971.

B. Thomas McElroy, Dallas, Tex., for plaintiff; Curtis Prangley and Harry Levy, Chicago, Ill., of counsel.

Howard E. Moore, Dallas, Tex., for defendants.

HUGHES, District Judge.

### Findings of Fact

1. This is an action for infringement of U. S. patent No. 3,332,327, hereinafter referred to as the '327 patent relating to a pavement marker. The complaint charges that defendants, Highway Safety Devices, Inc., and G. D. Morris, with having infringed by making, or causing to be made, and by selling, offering to sell, or causing to be sold, pavement markers embodying the patented invention. Reflex Corporation of Canada, Limited, International Tools, Limited, I. T.L. Industries, Limited, and Peter Hedgewick are charged with actively inducing Highway Safety Devices, Inc. and G. D. Morris to infringe the aforesaid patent. The Plaintiff seeks an injunction against infringement and damages. The Defendants deny infringement and contend the patent is invalid and void. A counterclaim seeks a declaratory judgment that said patent is invalid and unenforceable.

2. The jurisdiction of this Court is predicated upon the fact that this is an action arising under the Patent Laws of the United States, 28 U.S.C. section 1338.

3. The plaintiff, Amerace Esna Corporation is a Delaware corporation with its principal office in New York, New York.

4. Defendant, Highway Safety Devices, Inc., is a Louisiana corporation with a place of business in Dallas, Texas. G. D. Morris is the president of Highway and is a resident of Dallas, Texas. Defendant Reflex Corporation of Canada, Limited is a Canadian corporation; International Tools, Limited is a Canadian corporation. Both are wholly owned subsidiaries of I.T.L. Industries, Limited, a Canadian corporation. All have places of business in the Province of Ontario, Canada. Peter Hedgewick is a citizen of Canada and is president of each of the three corporate defendants.

5. The accused pavement markers were designed by the Canadian corporate defendants and the tools necessary to make the accused pavement marker shells were manufactured by the Canadian corporation defendants and by virtue of such activities and possibly others the Canadian corporate defendants have induced and made possible the alleged direct infringements of Highway Safety Devices and G. D. Morris.

6. The patent '327 was issued to the Elastic Stop Nut Corporation on July 25, 1967, and assigned to plaintiff, Amerace, on August 30, 1968, since which time Amerace has been the owner of said patent.

7. The '327 patent is directed to a pavement marker secured to the pavement that reflects a high intensity light beam which serves to delineate a lane line. The light beam is a reflection of the car head lights at a very small angle such as to be visible to the driver. It functions primarily in the night time.

8. Claim 1 defines the basic structure of the invention in terms of there being, in a pavement marker having a base to be affixed to the roadway, a body of light transmitting synthetic resin having reflective elements; the reflective ele-

ments having certain structural details for receiving incident light emanating from the source, and for reflecting the light back to the source so that the reflected light is generally parallel to the incident light. The claim further specifies that the obverse or front face of the reflector body is positioned at a minimum angle of 15° relative to the associated base and roadway, to maintain adequate optical effectiveness of the pavement marker while allowing wiping of the front face by contact with the oncoming vehicle.

9. Claim 8 specifies that the pavement marker is in the form of a shell-like structure, the reflective body being part of the shell. Claim 8 also calls for a light-reflecting material to be disposed upon the inner surface of the reflecting portion and a filler material contiguous with the inner surface and light-reflecting material for reinforcing the shell-like body against forces applied by the tires of the oncoming vehicle.

10. Claim 13 specifies that the pavement marker has a unitary molded shell of light-transmitting synthetic resin, of which the reflector portion is formed as a part thereof; claim 13 also includes the limitation that there is a light reflecting material on at least the reflector portion, and a filler material inside the shell and specifies the preferred front surface angle of about 30°.

11. Claims 2 through 7 are dependent on claim 1; claims 9 through 12 are dependent on claim 8; and claims 14 through 16 are dependent on claim 13. The dependent claims specify further structural details, such as the preferred angular range (claims 2 and 11); the optimum angle (claims 4 and 12) for the face of the reflector body; details of the reflector body (claims 7 and 16) and the nature of the light reflecting material (claim 10).

12. The essence of the invention is the determination of the front slope angle and the discovery that the body of light transmitting synthetic resin when properly positioned, will function in a manner totally unexpected of the material, from its theretofore well known characteristics.

13. Defendants cited the following patents as prior art: Stimson 1,906,655; Leubaz 2,991,698; Guintini Italian patent 507,199; Wiswell 3,277,800; DeShazor 2,708,858; French patent 1,118,035; Batterson 2,635,513 and 2,699,982; Mattson 2,666,373; and Leray British patent 441,319.

14. The file wrapper of the patent in suit discloses that the examiner considered Stimson 1,906,655 and Leubaz 2,991,698.

15. Stimson discloses a reflex light reflector including an obverse light receiving face and a reverse light reflecting face consisting of a plurality of cube corners each having three surfaces adapted for total internal reflection of light impinging thereon from the obverse face. The Stimson reflector is a tail-light mounted on a vehicle. Not being attached to the highway, it is not exposed to dirt and constant wear and abrasion by the tires of high speed vehicles. There is no mention of the angle of the front face.

16. Leubaz 2,991,698 is a light reflecting roadmarker comprising a lens-shaped block of glass having a spherical convex upper surface, embedded in the ground with the exception of its upper face. The bottom is provided with reflecting faces disposed in at least one series of right angled mirrored dihedrons of which both sides are inclined with regard to the bottom. The dihedrons are tipped successively more toward the vertical going from the center to the outside edge. Leubaz illustrates how dihedron reflectors can be angled to orient them from receiving and reflecting rays refracted at the outside domed face of the marker. The top has no front face and there is no mention of an angle of the convex surface.

17. Originally the examiner rejected the patent in suit in view of Stimson and Leubaz. Thereafter claim 1 was amended to provide that the obverse

(front) face make an angle of at least 15° with the base. All claims provide for an angled front face, which is the chief distinction over Stimson and Leubaz.

18. Defendant contends that an essential feature of the patent in suit, angled reflex refractors was not disclosed as prior art nor was the examiner referred to any patent containing angled reflex reflectors.

19. The file wrapper shows that after amendment the examiner searched class 350, subclasses 103 and 102, 103 being the same class and subclass in which Leray U. S. patent 2,055,299 is found. The chief feature of Leray is angled reflex reflectors. In an interview with the examiner the solicitor prosecuting the application advised the examiner that the concept of angled reflex was old.

20. There is no single prior art patent which meets all of the limitations of any of the claims of the '327 patent. Patents cited separately contain features of the '327 patent, but none discloses the appropriate position of the front face to maintain optimum efficiency under the conflicting effects of wiping and abrasion.

21. A device described in a letter from R. F. Edouart to Jack Brady of the Traffic Road Division of Amerace, dated April 1, 1959, related to a highway marker. The language was vague and indefinite. There were no drawings or models and work on it was abandoned by Edouart. Neither the letter nor the information contained therein was ever made known to S. A. Heenan, the inventor of the highway marker, described in patent '227.

22. None of the publications in print at the time of the application for the patent in suit reveal the essential features of the invention.

23. The tail-light lenses used in the 1961 Mercury and the 1964 Ambassador illustrate the use of angled reflex reflectors but contain no other essential feature of the patent in suit.

24. For many years there was a need for a highway pavement marker which would be effective in being visible in the night time under adverse conditions from an oncoming vehicle. Numerous attempts had been made to obtain such a marker and all had failed.

25. Stimsonite, a division of Amerace, began serious efforts to develop an effective pavement marker in 1961. Numerous tests were made to determine the angle of the front face to obtain the best visibility and the least vulnerability to abrasion and dirt. The object was to obtain a night time marker clearly visible, which would be least subject to wear and would clean easily.

26. The first of such markers, incorporating the essential features of the patent in suit were put on the market early in 1964. They met with immediate success and were adopted by the California Highway Department for placement on major highways of the state.

27. I.T.L. Industries came into possession of a Stimsonite marker and was evaluated by its engineering department. The evaluation report was forwarded to Hedgewick, president of I.T.L. and discussed with the vice-president of engineering. Thereafter work on a pavement marker was commenced by I.T.L. No work had previously been done by I.T.L. to obtain an effective pavement marker. Some time later Hedgewick visited California where the Stimsonite markers were in use on the highways.

28. The accused structure is a pavement marker. It relates to roadway reflectors that are mounted on a roadway to reflect the light from the headlight of an oncoming automobile and thereby delineate the roadway to the driver of the vehicle.

29. The accused marker has the following features:

a. A horizontal base adapted for engagement with the road;

b. A body of light transmitting synthetic resin having an outer surface including an obverse light receiving and reflecting face;

c. A reflex reflecting system including a plurality of retrodirective reflector elements of the cube corner type in said reverse face;

d. Said obverse face making an acute angle of at least 15° with the base to rise above the roadway surface.

e. Each of said reflector elements having 3 planor surfaces arranged mutually at right angles and meeting at a common point remote from said obverse face to form a cube corner and an axes passing through the cube corner of each reflector element.

30. These features of the accused marker read literally on claim 1 of the patent in suit.

31. The accused marker has a housing of plastic material in which a reflective insert is placed. It is defendants' contention that this housing of plastic material differentiates the accused marker from claim 1 of the patent in suit, but claim 1 does not state whether the body of light transmitting synthetic resin is or is not in a housing nor is there any reason to infer what the form of the body is.

32. The accused pavement markers are the full functional equivalent of the structure specified in claims 1 through 7. Tests of Amerace's patented pavement marker and the accused marker reveal that the measurements of reflective light are similar, both have substantially the same structural abilities under strength and heat tests and operate the same when exposed to similar road conditions.

33. The obverse or front face of the reflective inserts of the following exhibits of Defendants' markers were designed to be positioned at the specific angle relative to the horizontal base of the respective housings: PX–10 25°; PX–11 27°; PX–12 31°; PX–13 31°; PX–14 25°; PX–15 25°; PX–16 31°. These angles are within the limitation of claim 2 wherein the acute angle with the base is from 15° to approximately 45° and the limitation of claim 4 where the acute angle with the base is about 30°.

34. The axes of the cube corners of the reflective inserts of the following exhibits of defendants' markers are disposed at 37½° relative to the normal to the front face of the insert: PX 10 to PX 16. In each of the accused pavement markers, the cube corner axes were designed to be in general alignment with the ray of light which was reflected after incidence thereof upon the obverse face of the reflective inserts. These axes are within the limitation of claims 3, 5, and 6 for the alignment of the cube corner axes.

35. The reflective inserts of the accused pavement markers are each molded of methyl methalcrylate having an index refraction of about 1.5 and are within limitation of claim 7.

36. Claims 8 through 12 of the patent in suit provide for a shell-like body of light transmitting resin material. The body of the accused marker includes an opaque synthetic resin housing containing reflector bodies of light-transmitting synthetic resin. The recitation in the claims that the shell-like body is of light-transmitting synthetic resin was neither essential to obtaining allowance of the claims nor is the opaque resin essential to operation of the accused marker.

37. Defendants contend that by making their pavement marker in two pieces, using two different materials they are able to make a stronger marker and one that provides greater day time visibility. The changes made by defendant, however, do not result in a functional change in the accused marker.

38. By various tests made by Amerace it was established that the accused pavement markers are the structural and functional equivalent of the pavement marker in suit and they accomplish substantially the same result in use as the pavement marker described in claims 8 through 12.

39. Despite defendants' claim of greater daylight visibility, tests conducted by Amerace establish that the two markers are equally lacking in daylight visibility.

40. Claims 13 through 16 provide for a unitary molded shell of light transmitting synthetic resin material. The shell of defendants' marker is formed in a two-step molding process, the reflective insert being molded first and then the housing portion being molded upon the insert. The shell resulting from defendants' two-step molding process forms a unitary structure. Other than the shell the accused marker and the marker of the patent in suit are similar in structure.

41. The accused pavement markers have substantially the same structure which operates in substantially the same way to accomplish substantially the same result as the pavement marker described in claims 8 through 16. It differs in only unimportant details from the patent in suit.

42. There is no evidence that Peter Hedgewick acted other than in his capacity as president of the various corporations involved.

### Conclusions of Law

1. This Court has jurisdiction of the subject matter in suit and over the parties hereto.

2. Plaintiff, Amerace Esna Corporation is the owner of Patent No. 3,332,327 and has the right to maintain suit for infringement of the patent.

3. Under 35 U.S.C.A. section 282, the patent in suit is presumed to be valid and the burden of establishing the invalidity rests upon defendants. However, plaintiff has the burden of proving infringement.

4. The appropriate position of the front face of the pavement marker of the '327 patent to maintain maximum reflection and optimum efficiency under the conflicting effects of wiping and abrasion constitute a new and useful feature of a highway marker within the scope and meaning of 35 U.S.C. § 101.

5. None of the prior art offered in evidence identically discloses or describes the invention as claimed in '327 in accordance with the requirements set forth under 35 U.S.C. § 102.

6. The prior art offered in evidence does not anticipate any of the claims of the '327 patent. The utilization of the front face angled to obtain maximum reflection and optimum efficiency to withstand the effects of dirt and abrasion is the new feature which distinguishes it from prior art and is the feature making the structure patentable.

7. The difference between the subject matter set forth in the '327 patent and the subject matter of the cited prior art references as a whole would not have been obvious at the time the invention was made to a person of ordinary skill in the art to which such subject matter pertains.

8. Where there has been a long standing need for a solution to overcome defects in the prior art, the answer to the problem as solved by the patentee of the Patent '327 was not obvious to those skilled in the art.

9. The degree of ultimate success and the acclaim following use of Amerace's highway markers are considerations tending to demonstrate that the invention of the '327 patent would not have been obvious to a person having ordinary skill in the art at the time the invention was made.

10. The commercial success of Amerace's highway markers in their immediate use on highways is a circumstance, when combined with other circumstances, which indicate invention.

11. It is presumed the patent examiner examined prior patents which were in the class and subclass in which the patent in question was officially classified and had discarded them.

12. The party charging fraud has the burden of proving such charges by clear and convincing evidence.

13. To render a patent unenforceable for fraud, misrepresentations

or concealment must be material and made with fraudulent intent. There being no evidence of material false representations or concealments plaintiff was not guilty of fraud in the prosecution of the patent in suit.

14. Since claims 1 through 7 of the '327 patent read literally on the accused highway markers defendants by their manufacture and sale of such markers have infringed such claims.

15. In determining equivalency consideration must be given to the purpose for each element as used in the patent, the qualities of each element when combined with the other elements and the function which the element in intended to perform.

16. Infringement cannot be avoided by the omission of a nonessential element recited in the claim.

17. Infringement is not avoided by making into two pieces what a claim specifies as one, provided that the two pieces perform the function of the one in the same way.

18. Infringement is not avoided because an accused structure constitutes an improvement of the claimed invention.

19. The accused pavement markers are the structural and functional equivalent of plaintiff's patented marker and accomplish substantially the same result as the pavement markers described in claims 8 through 16.

20. Defendants, by their manufacture and sale of pavement markers, the equivalent of plaintiff's marker, have infringed claims 8 through 16 of the '327 patent.

21. Plaintiff is entitled to an injunction against further infringement of Patent 3,332,327, to an accounting for the damages sustained by reason of such infringement not less than a reasonable royalty, to a judgment on the damages so determined and execution on such judgment, and to an award of costs. The questions of willful infringement,

increasing of damages under Title 35 U.S.C. Section 283, the amount and period of interest and attorney's fees pursuant to Title 35, U.S.C. Section 285 are hereby specifically reserved until the accounting period.